GILBERT CREEK LAND CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 13848. Promulgated December 26, 1928.

*Rolla D. Campbell, Esq.,* and *David C. Howard, Esq.,* for the petitioner.

*Orris Bennett, Esq.,* and *Hartford Allen, Esq.,* for the respondent.

926

OPINION.

MARQUETTE: The petitioner, between March 2, 1906, and March 1, 1913, acquired from C. W. Campbell and his associates, a number of tracts of land containing a total of 6,364.48 acres, for which it issued its capital stock at the rate of one share of the par value of $100 for each two acres of land. The petitioner contends that the several tracts so acquired had at the dates of acquisition fair market values ranging from $36.25 to $46.25 per acre, or a total value of $277,321.51, and that it is entitled to include that value in its invested capital. The respondent, however, takes the position that Campbell and his associates were not acting for themselves in purchasing the land, but were in fact agents for the petitioner, and that the petitioner is, therefore, not entitled to include in in-

vested capital on account of these lands more than the amount Campbell and his associates paid for them, which he insists is an undetermined amount based on prices of from $7.20 to $20 per acre.

In support of their respective contentions as to whether Campbell and his associates were acting for themselves or as agents of the petitioner in purchasing the land under consideration, the petitioner and the respondent have cited numerous court decisions. However, we consider a discussion of these decisions unnecessary. We are unable to perceive, in the light of the evidence presented, any merit in the contention that Campbell and his associates were acting as agents of the petitioner. They purchased the lands with their own funds; took the titles thereto in their own name; paid the taxes thereon; cleared up the titles, and subsequently transferred them to the petitioner in exchange for its capital stock. It is true that as to some of the land purchased subsequent to 1906 they agreed among themselves that they would subsequently convey it to the petitioner. The petitioner was not, however, a party to this agreement. The petitioner at no time had any assets other than the land conveyed to it; it had no contract or agreement with Campbell and his associates whereby it could have forced conveyance, and there is no evidence to indicate that the petitioner ever had any interest in the land in question, either legal or equitable, until Campbell and the other men voluntarily conveyed it. Campbell and his associates testified at the hearing that they purchased the land for themselves and not as agents for any corporation formed or to be formed, and their testimony is supported and substantiated by other evidence. We are, therefore, of opinion that these men were acting for themselves; that they owned the land until they transferred it to the petitioner, and we will, therefore, proceed to ascertain the value of the lands at the dates of transfer.

. The evidence of record shows that the land that we are considering was, prior to 1902, composed of numerous small parcels. It was well timbered and was underlaid with seams of coal. However, as long as it continued to be divided into small tracts it was not particularly valuable either as a timber or a coal proposition and, furthermore, the titles appear to have been clouded. Campbell, who had dealt extensively in land in this vicinity, both for himself and as agent for other parties, and who was familiar with this particular land and with the titles, conceived the idea of buying these numerous small tracts and consolidating them into larger tracts, on the theory that after they had been consolidated and the titles cleared the value of the consolidated tracts would be greater than the aggregate value of the small tracts. This he and his associates proceeded to do. The petitioner has introduced a number of witnesses who were familiar with this land and with other land and

land values in the vicinity. They testified that the value of the several tracts transferred to the petitioner was from $30 to $60 per acre at the date of transfer. The testimony of Campbell, who was perhaps more familiar with the land than any of the other men associated with him and who, as has been stated, conceived the idea of buying and consolidating the numerous small tracts and who has had many years experience in buying and selling coal and timber land in West Virginia, testified that the land conveyed between March 3, 1906, and February 2, 1909, was of the value of from $30 to $35 per acre, and that the tract of 550 acres conveyed to the petitioner on July 22, 1912, was of the value of from $40 to $50 per acre. We think that, in view of Campbell's experience and his intimate knowledge of the petitioner's land and of other land and land values in the vicinity, his testimony is entitled to greater weight than that of the other witnesses, and that the values testified to by him are reasonable. We hold that the land conveyed to the petitioner between March 2, 1906, and February 2, 1909, inclusive, was of the fair market value of $32.50 per acre, and that the 550 acres conveyed on July 22, 1912, was of the value of $42.50 per acre. The petitioner is, therefore, entitled to include in its invested capital on account of these lands the amount of $212,345.60. The evidence also shows that the petitioner's stockholders paid to it by way of assessments the amount of $9,301.99, and it is also entitled to include that amount in its invested capital.

We are also of opinion that the land that the petitioner owned on March 1, 1913, and which it subsequently sold as set forth in the findings of fact, had a fair market value of $42.50 per acre on March 1, 1913. As to the March 1, 1913, value the petitioner introduced a number of witnesses. The values to which they testified run from $40 to $75 per acre. However, we think for the reasons above stated that the testimony of Campbell is entitled to greater weight than the testimony of the other witnesses. He stated that he really valued the land at $50 per acre but to be conservative put it at $40 to $45 per acre. The respondent, however, urges that the fair market value of this land on March 1, 1913, was not more than $30 per acre and he stresses the fact that on August 31, 1912, the petitioner's stockholders adopted a resolution authorizing the sale of the land at $30 per acre on or before January 1, 1913. We attach no particular weight to this action of the stockholders. The evidence shows that at the time certain stockholders desired, because of their private financial necessity, to make an immediate sale of the petitioner's land at a sacrifice in order to secure money for themselves, and that they secured passage of the resolution. No serious attempt was made, however, to carry it into effect. We do not consider that this action of the stockholders should, under the circum-

stances, be taken as indicating the actual value of the land at that time. The profit from the sale should be computed on the basis of a March 1, 1913, value of $42.50 per acre for that part of the land that the petitioner owned on that date.

The only other question is whether the sale of the upper tract was made in 1920 or in 1921. The respondent contends that it was made in 1920 and that the profit from the sale, if any, should be reported as income for that year. The petitioner, on the other hand, contends that the sale was not made until 1921. We are of opinion that the petitioner's contention as to this issue must be sustained. Assuming, for the purpose of this opinion only, that in 1920 Tams, as agent for the Guyan Collieries Corporation, entered into a valid and enforceable contract with the petitioner to purchase the upper tract, which the record does not show, the sale nevertheless did not take place until 1921. In the case of *North Texas Lumber Co.*, 7 B. T. A. 1193, the facts were that the taxpayer, in 1916, granted an option to purchase its property and in that year received notice that the option would be exercised if the purchaser approved the title. In 1916 there was no delivery or tender of the deed, nor delivery of possession of the property. Before the close of 1916 the purchaser was able, ready, and willing to perform the contract, but had made no tender of the purchase price. In 1917 payment was made and the deed delivered. The taxpayer kept its accounts and made its returns upon the accrual basis. This Board, in holding that the title passed in 1917; that the purchase price accrued in 1917, and that any gain from the sale should be reported as 1917 income, said:

We do not question that equitable title passed to the purchaser at the time the option was exercised and a contract to sell came into effect, so that any loss or damage to the property would have been the loss or damage of the purchaser. We do not understand, however, that because equitable title may have vested, the vendor then has a legal right to recover the purchase price, which is the principal question here involved since the books of the petitioner were kept upon an accrual basis.

Ordinarily one who has entered into a contract for the sale of property, whether real or personal, has no right to recover the purchase price until the delivery of the property sold. In the case of real property a right to recover by way of an action for specific performance may exist when a proper tender has been made. Here there was no delivery of the property to the purchaser either by giving it possession of the property, by delivery of the deed, or otherwise, until January 5, 1917, and no tender of delivery, and it was not until 1917 that any right to demand or receive payment of the purchase price arose.

See also, *Abraham B. Johnson, et al.*, 7 B. T. A. 820; *Mosher Manufacturing Co.*, 7 B. T. A. 187.

The evidence herein shows that the conveyance of the upper tract was not intended to be made until the survey had been completed and

accepted by the purchaser. The survey was not completed until 1921 and the conveyance was made and the purchase price paid in that year. We are therefore of opinion that the sale occurred in 1921, not in 1920, and that the profit, if any, arising from the sale of the upper tract was not income to the petitioner in 1920.

*Judgment will be entered under Rule 50.*